**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHEAR CONTRACTORS, INC.,**

                              **Plaintiff,**          **1:09-cv-621**
                                                **(GLS/DRH)**

            **v.**

**SHEAR ENTERPRISES & GENERAL**
**CONTRACTING** and **THOMAS SHEAR,**

                        **Defendants.**
_____
**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Delain Law Office, PLLC          NANCY B. DELAIN, ESQ.
107 North College Street
Schenectady, NY 12305

**FOR THE DEFENDANTS:**
Mastropietro, Frade Law Firm      JOHN P. MASTROPIETRO,
63 Franklin Street                ESQ.
Saratoga Springs, NY 12866

**Gary L. Sharpe**
**District Court Judge**


**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

      Plaintiff Shear Contractors, Inc. commenced this action against

defendants Shear Enterprises and Thomas Shear, alleging trademark

infringement and cyberpiracy under the Lanham Act, 15 U.S.C. § 1125, and trademark infringement and unfair competition under New York State common law.  (*See* Compl., Dkt. No. 1.)  Pending are Shear Contractors' motion for a temporary restraining order, (Dkt. No. 25), and Shear Enterprises' motion for summary judgment, (Dkt. No. 29).  For the reasons that follow, Shear Contractors' motion for injunctive relief is denied and Shear Enterprises' motion for summary judgment is granted.

## II. Background

Shear Contractors is a New York State corporation that was formed in May 1985 and is based in Schenectady, New York.  (*See* Compl. ¶¶ 2, 21, Dkt. No. 1.)  Kenneth Shear is the president of Shear Contractors. (*See id.* at ¶ 20.)  Shear Enterprises is a "doing business as" entity that was registered in October 2006 by Thomas Shear and is based in Saratoga Springs, New York.  (*See* Defs. SMF ¶¶ 2, 4-6, Dkt. No. 29:3.) Both Shear Contractors and Shear Enterprises provide residential and commercial roofing and other general contracting services, though the types and extent of other contracting services each entity performs is in dispute.  (*See id.* at ¶¶ 1-2.)

On June 1, 2009, plaintiff Shear Contractors, Inc. filed suit against

2

defendants Shear Enterprises and Thomas Shear for trademark infringement, cyberpiracy, and unfair competition.  (*See* Compl. ¶¶ 54-106, Dkt. No. 1.)  Shear Contractors alleges that the rights and interests it has in its unregistered trademark and logo have been infringed upon by Shear Enterprises.  (*See id.* at ¶ 19.)  Specifically, according to the complaint, Shear Enterprises' infringing activities include: the use of the name "Shear Enterprises" and "Shear Enterprises & General Contracting" in advertising, offering, and providing its services; the prominent manner in which the word "Shear" is displayed in its advertisements; and the use of "shearcontracting.com" as an internet domain name.  (*See id.* at ¶¶ 31-45, 55-83, 91-94.)  As a result of this alleged conduct, Shear Contractors contends that it suffered a drop in telephone calls and a consequent loss of new business, and that Shear Enterprises has caused confusion among consumers and is capitalizing on and harming Shear Contractors' goodwill and reputation.  (*See id.* at ¶¶ 74-79, 85, 100-01; Pl. TRO Mem. of Law at 2-3, Dkt. No. 25:3[1]; Pl. Resp. SMF ¶¶ 74-75, Dkt. No. 31.)

---

[1]As is patently obvious, Shear Contractors' Memorandum of Law submitted in support of a temporary restraining order is a word-for-word reproduction of its Response Memorandum of Law submitted in opposition to Shear Enterprises' motion for summary judgment, save each memorandum's captioned title and final prayer for relief.  (*Compare* Pl. TRO Mem. of Law, Dkt. No. 25:3, *with* Pl. Resp. Mem. of Law, Dkt. No. 30:3.)  Since the underlying legal questions and analysis are sufficiently similar for injunctive relief and summary judgment, the court declines

On April 8, 2010, Shear Contractors moved for a temporary restraining order, seeking to enjoin defendants from advertising under the Shear mark and logo on any internet-based mechanism; from using or advertising under the name "Shear Roofing Contractors"; and from posting to, advertising through, or utilizing "saratogaroofingcontractors.com" or any other website or domain name that might infringe on Shear Contractors' claimed trademarks. (*See* Pl. TRO Mot. at 4, Dkt. No. 25:1.) In addition to opposing Shear Contractors' motion for injunctive relief, (*see* Dkt. No. 26), Shear Enterprises thereafter moved for summary judgment on Shear Contractors' claims, (*see* Dkt. No. 29).

### III.  Standards of Review

The standards for injunctive relief and summary judgment are well established and will not be repeated here. For a full discussion of the standards, the court refers the parties to its previous opinions in *Phelan v. Hersh*, 9:10-CV-011, 2010 WL 277064, at *5-6 (N.D.N.Y. Jan. 20, 2010) (injunctive relief), and *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007) (summary judgment).

---

Shear Enterprises' invitation to treat this as a concession of certain legal arguments. (*See* Def. Reply Mem. of Law at 3, Dkt. No. 32:1.) However, the court does not look favorably upon such derelictions.

# IV.  **Discussion**

## A.    **Federal Trademark Infringement**

Trademark infringement claims brought pursuant to the Lanham Act are analyzed under a two-pronged test.  "The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether the defendant's use of the mark is likely to cause confusion as to the origin or sponsorship of the defendant's goods."  *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (internal quotation marks and citation omitted).

Under the first prong, where a mark is unregistered, the plaintiff must establish that its mark nonetheless qualifies for protection.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  Eligibility to trademark status and the degree of protection to be accorded depends largely on the category into which a mark falls.  *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976).  These categories, from least distinctive to most, are: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful."  *Id.*  "[A] mark must be capable of distinguishing the [plaintiff's] goods from those of others."  *Two Pesos, Inc.*, 505 U.S. at 768 (citation omitted).  Marks that are suggestive, arbitrary, or

5

fanciful "are deemed inherently distinctive and are entitled to protection ... because their intrinsic nature serves to identify a particular source of a product." *Id.* In contrast, generic marks which "refer[] to the genus of which the particular product is a species" are not registrable. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) (citing *Abercrombie & Fitch Co.*, 537 F.2d at 9). Likewise, descriptive marks which are "not inherently distinctive" and "do not inherently identify a particular source" are not presumptively protected. *Two Pesos, Inc.*, 505 U.S. at 769. But unlike generic marks, "descriptive marks may acquire the distinctiveness which will allow them to be protected." *Id.* To acquire sufficient distinctiveness, or "secondary meaning," a mark must "ha[ve] become distinctive of the [plaintiff's] goods in commerce." *Id.* (internal quotation marks and citations omitted).

To prove secondary meaning, a plaintiff must satisfy a "heavy burden" and "rigorous evidentiary requirements." *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 815 F.2d 8, 10 (2d Cir. 1987) (internal quotation marks and citations omitted). The plaintiff must demonstrate consumer recognition, meaning "the name and the business have become synonymous in the mind of the public, submerging the primary meaning of

6

the term in favor of its meaning as a word identifying that business."
*Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 104 (2d Cir. 1985) (citations
omitted).  For instance, the plaintiff may proffer evidence of advertising
expenditures, successful advertising, consumer studies, sales success,
unsolicited media coverage, length and exclusivity of use, or intentional
copying by the defendant.  *See 20th Century Wear, Inc.*, 815 F.2d at 10;
*Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985).
On the other hand, a court may consider the commonality of a name in the
relevant market or geographical area and the use of the mark by others
without the plaintiff's objection.  *See, e.g.*, *Brennan's Inc. v. Brennan's
Rest., LLC*, 360 F.3d 125, 132-33 (2d Cir. 2004); *Streetwise Maps, Inc. v.
VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998).

"Personal names used as trademarks are generally regarded as
descriptive terms ... [and] are thus protected only if, through usage, they
have acquired distinctiveness and secondary meaning."  *Abraham Zion
Corp.*, 761 F.2d at 104 (citation omitted).  "Once an individual's name has
acquired a secondary meaning in the marketplace, a later competitor who
seeks to use the same or similar name must take 'reasonable precautions
to prevent the mistake.'"  *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569

F.2d 731, 734 (2d Cir. 1978) (quoting *L.E. Waterman Co. v. Modern Pen Co.*, 235 U.S. 88, 94 (1914)).  Still, determining what constitutes "reasonable" precautions or limitations entails a fact-intensive analysis that must be made with balance and the understanding that "to prohibit an individual from using his true family surname is to take away his identity ... [and] is so grievous an injury that courts will avoid imposing it, if they possibly can."  *Id.* at 735 (internal quotation marks and citation omitted).

Upon a showing of entitlement to protection, the second prong of the test for trademark infringement requires the plaintiff to demonstrate "that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark."  *Morningside Grp. Ltd. v. Morningside Capital Grp., LLC*, 182 F.3d 133, 138 (2d Cir. 1999) (internal quotation marks and citation omitted).  In evaluating the likelihood of confusion, a court must apply the non-exclusive multi-factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495-96 (2d Cir. 1961) (Friendly, J.).  These factors include: "(1) the strength of the mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) actual confusion, (5) the likelihood of plaintiff's bridging the gap, (6) defendant's

8

good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (citation omitted).  This list is not exhaustive and no single factor is controlling.  *See Morningside Grp. Ltd.*, 182 F.3d at 139 (citation omitted).

"[S]ummary judgment in a trademark action may be appropriate in certain circumstances, where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996) (citations omitted); *see also Playtex Prods., Inc. v. Ga.-Pac. Corp.*, 390 F.3d 158, 162, 166-67 (2d Cir. 2004) ("Where the predicate facts are beyond dispute, the proper balancing of the[] factors is considered a question of law."), *superseded by statute on other grounds*, 15 U.S.C. § 1125(c)(2)(B); *Medici Classics Prods., LLC v. Medici Grp. LLC*, 683 F. Supp. 2d. 304, 308-09 (S.D.N.Y. 2010) (collecting cases).

Here, it is undisputed that Shear Contractors' mark is unregistered and is merely descriptive, as it is derived from founder and president Kenneth Shear's surname.  Consequently, the court must evaluate whether it has acquired distinctiveness and secondary meaning.  Shear Contractors

has offered no tangible evidence to establish secondary meaning.  Aside

from the fact that Shear Contractors has been in existence for over twenty-

five years, during which time it has continuously used the "Shear" mark,

Shear Contractors offers only conclusory statements and generalities, (*see*

Pl. TRO Mem. of Law at 4-5, Dkt. No. 25:3), without providing any evidence

of advertising expenditures or success, consumer studies, sales numbers,

or other probative information or data.  And rather than offer evidence of

intentional misbehavior or plagiarism, Shear Contractors highlights pieces

of Thomas Shear's testimony that suggest he was unaware of Shear

Contractors as an entity when he founded Shear Enterprises.  (*See* Pl.

Resp. SMF ¶ 7, Dkt. No. 31 (citing T. Shear Aff ¶ 6, Dkt. No. 29:1).)

Furthermore, as Shear Enterprises illustrates, use of the name "Shear" is

quite prevalent in both New York State and the Capital District region.

(*See* Mastropietro Aff. ¶ 24 & Ex. D, Dkt. No. 29:10 (listing 410 corporate

entities in New York State bearing the name "Shear"); Mastropietro Aff., Ex.

J, Dkt. No. 29:14 (listing 16 business entities that begin with the name

"Shear" in the Capital District Area Yellowbook; *see also* Mastropietro Aff.,

Ex. K, Dkt. No. 29:15 (listing 24 individuals with the surname "Shear" in the

Capital District Area Yellowbook).)  Lastly, in addition to the fact that Shear

Contractors did not notify Shear Enterprises of its infringement concerns until April 2009, approximately two and a half years after Shear Enterprises was registered, Shear Contractors and Kenneth Shear have admittedly never contacted or otherwise objected to any other entities who use either the "Shear" name or the "rooftop" logo—though Shear Contractors saliently points out that its concern is with the combined use of "Shear" with a rooftop graphic.

Based on the above evidence, or lack thereof, the court finds that Shear Contractors has failed to demonstrate that its mark is entitled to protection. There has been nothing presented that conclusively shows or potentially suggests that the name "Shear," with or without a rooftop graphic, carries a secondary meaning that transcends mere descriptiveness. While the length of time Shear Contractors has been in operation is substantial, the remainder of the record reveals that Shear Contractors' mark is neither inherently nor extrinsically distinctive.

Even if the court were to deem Shear Contractors' mark subject to protection, the material facts—which are predominantly undisputed—and the relevant *Polaroid* factors do not forecast a likelihood of confusion. As to the first factor, strength of the mark, Shear Contractors' claimed mark is

decidedly weak for all of the reasons discussed above.  The second factor,
similarity of marks, favors Shear Contractors insofar as both Shear
Contractors and Shear Enterprises prominently display the name "Shear"
and utilize a graphic that resembles a roof.  Still, while Shear Contractors'
logo clearly incorporates a rooftop and a chimney, with the word "Shear"
off-center, Shear Enterprises' logo incorporates the word "Shear" centered
under a more abstract triangular shape.  (*Compare* Compl. Ex. A, Dkt. No.
1:1, *with* Compl. Ex. Q, Dkt. No. 1:6.)  Equally important, the words
"Contractors" and "Enterprises" are conspicuously displayed on the
respective logos.  The third factor, proximity of the products, also favors
Shear Contractors, for there is no question that Shear Contractors and
Shear Enterprises advertise and provide near-identical services to a widely
overlapping geographical area.[2]

Apart from the second and third factors, however, the remaining
relevant factors[3] weigh against Shear Contractors' claim.  Shear

---

[2]Shear Enterprises' responsive contention that the range of services each entity
provides does not overlap is neither persuasive nor supported by the record.  (*See* Def. Mem.
of Law at 12, Dkt. No. 29:4.)  Instead, the evidence establishes that Shear Enterprises both
advertised itself as a general contractor and performed a wide variety of contracting services.

[3]Contrary to both parties' arguments, the services offered by Shear Contractors and
Shear Enterprises are in close proximity and "there is really no gap to bridge, and [therefore]
this factor is irrelevant to the *Polaroid* analysis in this case."  *Star Indus., Inc. v Bacardi & Co.
Ltd.*, 412 F.3d 373, 387 (2d Cir. 2005) (citation omitted).

Contractors has failed to establish even a minimal basis for actual

confusion.  Putting aside the absence of a consumer survey, which in itself

can be "evidence that actual confusion cannot be shown," *The Sports*

*Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996), the

anecdotal evidence offered by Shear Contractors is either irrelevant or de

minimis at best.  As discussed at length by defendant Shear

Enterprises—but not mentioned at all in Shear Contractors' submissions to

the court—the instances of alleged confusion testified to by Kenneth Shear

and Shear Contractors' Corporate Secretary, Tracy Czub, are vague,

unsupported by any documentation, and involve a handful of individuals

who in passing saw Shear Enterprises' signage and momentarily mistook it

for Shear Contractors.  (*See* Def. SMF ¶ 33, Dkt. No. 29:3 (citing Def. Ex.

D, Pl. Interrog. Resps. at 7, Dkt. No. 29:8); *see also* Def. Mem. of Law at

13-15, Dkt. No. 29:4; Def. Ex. G, K. Shear Dep. at 12-19, Dkt. No. 29:11;

Def. Ex. H, Czub Dep. at 9-19, 22-24, Dkt. No. 29:12.)  The lone instance

alleged by Shear Contractors of actual confusion—meaning confusion

"which affects the purchasing and selling of the goods or services in

question," *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991)

(internal quotation marks and citation omitted)—is founded upon multiple

levels of hearsay, is based solely on Kenneth Shear and Tracy Czub's unverified "beliefs," and involves an unidentified individual who actually told Czub that she knowingly and intentionally hired Shear Enterprises and *not* Shear Contractors.  (*See* Def. Ex. H, Czub Dep. at 18-19, Dkt. No. 29:12.) Equally inexplicable, Shear Contractors relies on Thomas Shear's testimony regarding three calls he received from individuals who, believing they were contacting Shear Contractors, were reporting mistakes made by Shear Contractors and the need for repairs.  (*See* Pl. Resp. SMF ¶ 47, Dkt. No. 31 (citing Pl. Ex. 1, T. Shear Dep. at 15-16, Dkt. No. 31:1).)  But this testimony does not show any mistaken purchasing decisions or any subsequent deception, since Thomas Shear further testified to disabusing the three callers of their misperception.  Nor does this testimony demonstrate that Shear Enterprises' conduct "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation."  *Lang*, 949 F.2d at 583.  Rather, this testimony arguably raises some doubt about the quality of Shear Contractors' product.

The sixth factor, Shear Enterprises' good faith, also weighs against Shear Contractors.  While the issue of good faith does not normally lend

14

itself to disposition on summary judgment, *see Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559-60 (2d Cir. 1989), Shear Contractors has offered no direct or circumstantial evidence from which a reasonable factfinder could infer bad faith.  First, the testimonial evidence conclusively establishes that Thomas Shear was unaware of Shear Contractors when he formed his company.  Second, Shear Enterprises' advertising practices, including use of the name "Shear Enterprises & General Contracting," in and of themselves do not create an inference of bad faith.  Third, as to the domain names Shear Enterprises has operated under, (*see* Pl. Resp. SMF ¶¶ 15, 22, Dkt. No. 31), Shear Enterprises admits to having used the domain name "shearcontracting.com" at some point in the past.  (*See* Def. Mem. of Law at 21, Dkt. No. 29:4.)  However, Shear Contractors has failed to substantiate its allegations with any evidence regarding the duration and nature of Shear Enterprises' association with this domain name.  Thomas Shear's averment that Shear Enterprises has no present relationship with that domain name is uncontradicted.  And an internet search reveals that the domain name "shearcontracting.com" does not currently exist and the website "saratogaroofingcontractors.com" does not refer to or contain an advertisement for Shear Enterprises or any of its alleged aliases.

With regard to the quality of Shear Enterprises' services, Shear Contractors admittedly has no evidence showing that Shear Enterprises offers inferior services or that Shear Enterprises' presence in the market has tarnished or otherwise affected Shear Contractors' reputation.[4]

Finally, the degree of sophistication possessed by potential consumers further reduces any likelihood of confusion.  In general, "the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace." *Savin Corp.*, 391 F.3d at 461 (citing *Maxim's Ltd. v. Badonsky*, 772 F.2d 388, 393 (7th Cir. 1985).)  And "where the cost of the defendant's trademarked product is high, the courts assume that purchasers are likely to be more discriminating than they might otherwise be." *Maxim's Ltd.*, 772 F.2d at 393 (internal quotation marks and citations omitted).  While Shear Contractors is correct that buyers of its services "are members of the

---

[4]The court rejects Shear Contractors' argument that "even if the quality of [Shear Enterprises'] goods or services is similar ... 'the good quality of [Shear Enterprises'] product actually may increase the likelihood of confusion as to source ... [and t]he fact that [Shear Enterprises has] produced a quality copy suggests that the possibility of [its] profiting from [Shear Contractors'] goodwill is likely.'"  (Pl. TRO Mem. of Law at 9-10, Dkt. No. 25:3 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986).)  Shear Contractors' reliance on this argument is legally and factually misplaced in the present context. Shear Contractors has offered no evidence regarding the quality of the services it provides. And Shear Contractors does not allege—and there is no evidence to suggest—that Shear Enterprises has attempted to copy any aspect of its services, products, or overall operation.

16

general public who are homeowners [and] business owners," (Pl. TRO

Mem. of Law at 10, Dkt. No. 25:3), its analysis is otherwise erroneous.  As

evidenced in Kenneth Shear's testimony, ordinary consumers of

contracting services typically engage in a multi-step process before hiring a

contractor.  (*See* Def. Ex. G, K. Shear Dep. at 19-20, Dkt. No. 29:11

(describing process to include a preliminary telephone conversation, an in-

person meeting, an on-site visit and inspection, and the issuance of an

estimate on company letterhead, which may be accompanied by company

literature); *see also* Pl. Ex. 1, T. Shear Dep. at 11, Dkt. No. 31:1

(characterizing customers as "sophisticated").)  Moreover, contracting

services, including but not limited to roofing replacement and installation,

can undeniably be categorized as high priced.  Thus, the nature of the

services Shear Contractors and Shear Enterprises provide does not lend

itself to impulse buying or careless consumption.  Accordingly, the

likelihood that potential or actual consumers will be confused about the

source of services is remote.

   In a thin attempt to demonstrate actual harm, Shear Contractors

posits that it has experienced a drop in telephone calls that has resulted in

a 40% loss of new business for the period of January through March 2010

and that this drop can only be explained by the "presence of [Shear

Enterprises'] website, [which identifies its] address and telephone number,

and the mark SHEAR that is the subject of the present action."  (Pl. TRO

Mem. of Law at 2-3, Dkt. No. 25:3.)  The court rejects this argument as it

rests on a syllogistic fallacy and relies on pure conjecture without any

evidentiary support.

Having considered the parties arguments, evaluated the undisputed

facts, and weighed the relevant factors, the court concludes that plaintiff

Shear Contractors has failed as a matter of law to meet either prong of the

test for trademark infringement.  Therefore, the court grants summary

judgment in favor of Shear Enterprises on Shear Contractors' federal

trademark infringement claim and dismisses the claim.

## B.   New York State Trademark Infringement and Unfair Competition

For the same reasons that Shear Contractors' federal trademark

infringement claim fails, Shear Contractors' claims of trademark

infringement and unfair competition under New York State common law

must fail since there is "no difference in the relevant principles under either

[state or federal] law."  *Safeway Stores, Inc. v. Safeway Props., Inc.*, 307

F.2d 495, 497 n.1 (2d Cir. 1962); *see also Perfect Fit Indus., Inc. v. ACME*

18

*Quilting Co.*, 618 F.2d 950, 953 (2d Cir. 1980) ("New York law has concerned itself principally with whether or not the public is likely to be confused ...." (citations omitted); *McDonald's Corp. v. McBagels, Inc.*, 649 F. Supp. 1268, 1279-80 (S.D.N.Y. 1986) ("The single most important element of a state law unfair competition action is a showing that the defendant's conduct will result in consumers confusing the source of defendant's products." (citations omitted); *see, e.g.*, *Fifth Ave. of Long Island Realty Assoc. v. Caruso Mgmt. Co.*, No. CV 08-384, 2010 WL 2473861, at *16 (E.D.N.Y. June 15, 2010); *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. CV 08-0068, 2010 WL 2133937, at *6 (E.D.N.Y. Mar. 11, 2010); *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, No. 00 CV 5304, 2004 WL 896952, at *7 (E.D.N.Y. Mar. 26, 2004).  Therefore, Shear Contractors' state law claims of trademark infringement and unfair competition are dismissed.

## C.   <u>Cyberpiracy</u>

Under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), a plaintiff must first establish that it has a distinctive or famous mark that is entitled to protection.  *See Sporty's Farm LLC v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497 (2d Cir. 2000).  If the plaintiff can demonstrate

19

distinctiveness, it must then prove that the defendant has registered,

trafficked in, or used a domain name that is identical or confusingly similar

to the plaintiff's mark, and that the defendant acted with a bad faith intent to

profit from the plaintiff's mark.  *See* 15 U.S.C. § 1125(d)(1)(A); *see also*

*Storey v. Cello Holding, LLC*, 347 F.3d 370, 381 n.8 (2d Cir. 2003).  In

evaluating bad faith, a court may consider the following nine factors: (1) the

trademark or other intellectual property rights the defendant has in the

domain name; (2) whether the domain name consists of the defendant's

legal name or a name that is commonly used to identify the defendant; (3)

the defendant's "prior use, if any, of the domain name in connection with

the bona fide offering of any goods or services"; (4) the defendant's "bona

fide noncommercial or fair use of the mark in a site accessible under the

domain name"; (5) whether the defendant intended to divert consumers

from the plaintiff's online location to a site accessible under the domain

name for commercial gain or to tarnish, disparage, or otherwise harm

plaintiff's goodwill by "creating a likelihood of confusion as to the source,

sponsorship, affiliation, or endorsement of the site"; (6) whether the

defendant offered to transfer, sell, or assign the domain name to the

plaintiff or a third party for financial gain without using or intending to use

20

the domain name in the bona fide offering of goods or services; (7) whether the defendant provided "material and misleading false contact information" or "intentional[ly] fail[ed] to maintain accurate contact information" in applying for or registering the domain name; (8) whether the defendant has registered or acquired other domain names with knowledge that they are identical or confusingly similar to other individuals' distinctive or famous marks; and (9) "the extent to which the mark incorporated in the [defendant's] domain name registration is or is not distinctive [or] famous." 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX).  The statute also sets forth a "bad-faith safe harbor" provision where the defendant "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."  *Id.* § 1125(d)(1)(B)(ii); *see also Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01Civ.2950, 2005 WL 2148925, at *12-13 (Sept. 6, 2005).

Here, the court has already deemed Shear Contractors unable to make the threshold showing of distinctiveness.  And even if the court were to conclude that, or at least find a factual dispute as to whether, Shear Enterprises registered, trafficked in, or used a domain name that is identical or confusingly similar to Shear Contrators' mark, the court would

21

nonetheless conclude based on the reasons already detailed above that Shear Contractors has failed to offer any evidence from which a reasonable jury could conclude that Shear Enterprises or Thomas Shear acted with a bad faith intent to profit from or otherwise target Shear Contractors' name, goodwill, or internet presence.[5]  As to the § 1125(d) factors that extend beyond the *Polaroid* analysis, the record does not contain a scintilla of evidence suggesting that Shear Enterprises acquired or associated with a domain name under false pretenses or with the intent to profit from Shear Contrators' name and reputation or to otherwise profiteer off the purchase or sale of such domain names.

The court therefore grants summary judgment for Shear Enterprises and dismisses Shear Contractors' cyberpiracy cause of action.

## D.   Attorneys' Fees

Notwithstanding Shear Enterprises' newfound status as a prevailing party, the facts underlying the manner in which Shear Contractors brought and prosecuted this action do not warrant a finding of bad faith, impropriety, or other exceptionality.  Therefore, Shear Enterprises' request for attorneys' fees pursuant to 15 U.S.C. § 1117(a) is denied.

---

[5]Accordingly, the court need not address the applicability of the safe harbor exception.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiff Shear Contractors' motion for a temporary restraining order (Dkt. No. 25) is **DENIED**; and it is further

**ORDERED** that defendants Shear Enterprises and Thomas Shear's motion for summary judgment (Dkt. No. 29) is **GRANTED** and Shear Contractors' complaint is **DISMISSED**; and it is further

**ORDERED** that Shear Enterprises' request for attorneys' fees is **DENIED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 16, 2010
Albany, New York

United States District Court Judge